**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CONNIE W.[1] | Case No. 2:22-cv-3653 |
| Plaintiff, | Graham, J. |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff Connie W. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On November 1, 2019, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging she became disabled on March 5, 2019, based upon a combination of physical and mental impairments. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Thereafter, a telephone hearing was held on September 24, 2021, before ALJ Noceeba Southern; wherein Plaintiff, represented by counsel, and a vocational expert (VE) testified. (Tr. 38-57). On December

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

13, 2021, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 17-29).

Plaintiff was born in 1970 and was 49 years old on the alleged onset date of disability. She completed tenth grade and has past relevant work as a bartender and cleaner. (Tr. 27, 42). Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease lumbar spine; osteoarthritis/degenerative joint disease bilateral feet and ankle; traumatic osteoarthritis right foot; left Achilles tendonitis; obesity; carpal tunnel syndrome/generalized osteoarthritis hands; generalized osteoarthritis of the knees." (Tr. 19-20). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk four hours in an eight-hour day and sit six hours in an eight-hour day. She would benefit from a sit/stand option every hour for two to three minutes on task. Frequent handling with the bilateral upper extremities. Avoid foot controls. Occasional ramps or stairs but should avoid ladders, ropes, or scaffolds. Occasional stooping, kneeling, crouching, and crawling.

(Tr. 22). Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior work but could perform other jobs that exist in significant numbers in the national economy, including cashier, furniture rental clerk, and small parts assembler. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's

decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by failing to properly consider the supportability and consistency factors in her evaluation of Dr. Graham's opinion. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

**I.     Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....

3

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

**B. The ALJ's Decision is supported by Substantial Evidence**

    1. Supportability

Plaintiff's first assignment of error asserts that the ALJ erred by failing to properly consider the supportability factor outlined in 20 C.F.R. § 404.1520c. In this regard, Plaintiff contends that the ALJ did not properly evaluate Dr. Graham's consultative report. She argues, *inter alia*, that the ALJ did not properly explain why the sit/stand limitations in her RFC were appropriate when Dr. Graham opined that she would need to change positions constantly. Upon careful review and for the reasons that follow, Plaintiff's contentions are not well-taken.

Plaintiff treated with Dr. Graham from around November of 2019 to June 17, 2021. (Tr. 327, 462). Dr. Graham opined that Plaintiff could not perform even sedentary work with inability to sit, stand, and/or walk in combination for eight hours and would need to change positions constantly; occasionally lift up to 10 pounds; occasionally reach, handle, finger, feel, push, pull due to carpal tunnel syndrome; never operate foot controls due to ankle and foot instability and pain; never perform any postural activities; no exposure to any listed environmental condition, and would be absent more than four days per month. (Tr. 26, See also Tr. 930-35). In formulating Plaintiff's RFC, the ALJ found Dr. Graham's opinion to be unpersuasive, because it was "extreme and not supported by nor consistent with the evidence as a whole." (Tr. 26).

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 416.920c (2017). The new regulation at 20 C.F.R. § 416.920c differs from the previous regulation at 20 C.F.R. § 416.927 in several key areas. The agency no longer has a "treating source rule"

deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(a), (b).

The ALJ is only required to explain how he or she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he or she considered medical opinions. See 20 C.F.R. §§ 416.920c(b)(2)-(3).

In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2)

6

(further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. See Crystal E.J. v. Comm'r of Soc. Sec., No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).

Plaintiff argues that Dr. Graham's opinion is, in fact, supported by objective evidence. Specially, as Plaintiff points out:

> Dr. Graham ordered an x-ray of [Plaintiff's] lower back that revealed facet degenerative changes in the L5-S1. Tr 425. Dr. Graham diagnosed [Plaintiff] with chronic osteoarthritis in her knees, ankles, and feet. Tr 850. Dr. Graham's notes also document an abnormal EKG. Tr 566. Treatment notes from Central Ohio Primary Care, also from Dr. Graham, document issues with bilateral swelling in the feet, as well as snoring, insomnia, and COPD with acute exacerbation. Tr 471-473. Subsequent notes from Dr. Graham continued to document issues with heel pain and generalized stress. Tr 466.

(Plaintiff's Reply Brief, Doc. 16, p3).[2]

---

[2] The x-ray of Plaintiff's lower back revealed MILD facet degenerative changes (Tr. 425) and the abnormal EKG showed "normal LV function EF 55% no significant valvular heart disease. Left atrium was mildly dilated" (Tr. 568) and later in the records when Plaintiff further inquired what the abnormal EKG meant she was told the "EKG was interpreted as showing passible left atrial enlargement which is correct but is of no significance. I told the patient she need not worry about the abnormal EKG since the abnormality is insignificant." (Tr. 869). As to the ankle and feet, the evidence shows "Right foot and ankle: No acute fracture or evidence of dislocation. The ankle mortise is congruent. There are calcifications in the region of the plantar fascia. Small plantar and retrocalcaneal enthesophytes. Mild 1st MTP joint degenerative changes. Left foot and ankle: No acute fracture or evidence of dislocation. The ankle mortise is congruent. Plantar and retrocalcaneal enthesophytes are seen." (Tr. 811). Her provider recommended conservative management with stretching, icing, splinting, and shoe modification. (Tr. at 940). Plaintiff declined a referral to pain management. (Tr. at 938).

Despite Plaintiff's argument to the contrary, the ALJ properly considered the supportability factors and she adequately evaluated the opinion evidence in accordance with Agency Regulations and controlling law. None of the objective evidence relied on by Plaintiff, or otherwise in the record, supports Dr. Graham's opinion that she is "limited in ability to perform prolong tasks" and "needs to constantly change positions." (Tr. 931). The ALJ found that the limitations appear based on the Plaintiff's subjective allegations of disabling physical limitations rather than objective findings. (Tr. 26). The ALJ noted that Dr. Graham cited Plaintiff's medical conditions but did not offer any objective support for her opinion in the form of examination findings or diagnostic imaging. Id., 20 C.F.R. § 404.1520c(1). This does not mean that Dr. Graham failed to provide any objective evidence, as Plaintiff alleges (see. Doc. 3, page 3), but instead means that the AFJ found that the objective evidence Dr. Graham reviewed did not support her opinions. (Tr. 26-27).

Specifically, the ALJ noted that Dr. Graham's opinion "cites to chronic ankle instability and degenerative changes bilaterally in support of no operation of foot controls, which has been incorporated into the residual functional capacity, but otherwise does not support the limitations with objective, diagnostic signs and findings." (Tr. 26). The ALJ found that there is no support for Dr. Graham's significant reduction in sitting, given only mild findings related to back pain. (Tr. 27). As noted by the Commissioner, x-rays showed mild degenerative changes but was otherwise normal. (Tr. 425). She also had generally normal physical examinations of her back and extremities (Tr. 23, 463, 467, 473, 475, 553, 735, 795, 799).

2. Consistency

Plaintiff also argues that the ALJ did not consider the consistency factor and did not explain why the sit/stand option adopted in the RFC was representative of Dr. Graham's opinion that Plaintiff would need to change positions constantly. The ALJ's decision states that she "incorporated a specified sit/stand option rather than Dr. Graham's notation that she would need to constantly change positions, as this is not consistent with the evidence." (Tr. 27). The ALJ's conclusions in this regard indicate that the ALJ adequately considered the consistency factor in her evaluation of the opinion evidence. "The more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

In formulating Plaintiff's RFC, the ALJ incorporated the findings of the State agency medical consultants' physical assessments. She found their assessments to be persuasive to the extent that they support the ability to perform a range of light work, which is generally consistent with (and supported) by the evidence as a whole. (Tr. 27). She further noted that the evidence as a whole supports greater and additional limitations than those found by the State agency physicians; namely, as it related to the Plaintiff's ability to perform activities for prolonged periods of time due to increased pain, particularly while standing. Id. As such, the ALJ determined that a "sit/stand option is warranted, as well as additional no operation of foot controls due to bilateral foot and ankle impairments, reduced standing and walking due to pain in the feet and generalized osteoarthritis, as well as postural and manipulative limitations given the combined effect of chronic joint and back pain, generalized osteoarthritis of the hands and history of carpal tunnel

syndrome, and obesity." Id. The ALJ also noted that evidence received after the State agency consultants rendered their assessments supports the additional restrictions imposed. Id.

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. See *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Here, the ALJ's decision was not outside of the permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts*." Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009*). See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.").

Thus, this court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. See *Walker v. Sec'y of Health & Human Servs.,* 884 F.2d 241, 245 (6th Cir. 1989); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th

Cir. 1986). Here, substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED**, and that this case be **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CONNIE W.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

Case No. 2:22-cv-3653

Graham, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).